UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN THE MATTER OF            )
THE EXTRADITION OF          )
DERYA DIKICI                )    Case. No.  24-mj-1198-DLC
a/k/a DERYA TERZIOGLU       )

COMPLAINT
(18 U.S.C. § 3184)

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1. In this matter, I represent the United States in fulfilling its treaty obligation to the Republic of Türkiye ("Türkiye").

2. There is an extradition treaty in force between the United States and Türkiye, the Treaty on Extradition and Mutual Assistance in Criminal Matters between the United States of America and The Republic of Turkey, U.S.-Turk., June 7, 1979, 32 U.S.T. 3113 (the "Treaty").

3. Pursuant to the Treaty, the Government of Türkiye has submitted a formal request through diplomatic channels for the extradition of Derya Dikici ("Dikici").

4. The declaration from the U.S. Department of State with its attachments, including a copy of the diplomatic notes from Türkiye, a copy of the Treaty, and the certified documents Türkiye submitted in support of the request (marked collectively as Government's **Exhibit 1**) are incorporated by reference herein ("DIKICI – EXT. REQ.").

5. According to the information provided by the Government of Türkiye, Dikici was charged with aggravated embezzlement, in violation of Article 160/2 of Banking Law 5411, and

Articles 43 and 53 of Turkish Penal Code 5237.[1]

6. This offense was committed within the jurisdiction of Türkiye. On September 25, 2013, the Chief Judge of the Istanbul 8, Heavy Penal Court, issued a warrant for DIKICI's arrest, which remains enforceable.[2]

7. The warrant was issued on the basis of the following facts:

a. Turkish authorities suspect Dikici of committing aggravated embezzlement while working as a Portfolio Manager at DenizBank A.S. Gunesli Branch ("DenizBank"), between July 2009 and July 2011. Based on DenizBank's internal investigation, Dikici abused her position, which included managing customer accounts and executing financial transactions, to transfer 2,255,805 Turkish Lira ("TRY") (then-worth approximately 1,498,982.42 USD) and 278,000 USD from multiple DenizBank customer accounts ("victim customers") to her own account or third-party accounts without the victim customers' knowledge.[3]

b. In July 2011, after routine monitoring detected anomalies in certain customer accounts, DenizBank began an internal investigation and identified numerous irregular transactions involving multiple accounts Dikici managed.[4] Based on this internal investigation, DenizBank determined that Dikici embezzled customer money by 1) conducting electronic fund transfers ("EFTs") and remittances to her own account or third-party accounts, and 2) conducting unauthorized investment transactions in customer accounts.[5]

---

[1] DIKICI – EXT. REQ. at 00052, 00055-56.
[2] *Id.* at 00060.
[3] *Id.* at 00141, 00145.
[4] *Id.* at 00144, 00177.
[5] *Id.* at 00145-46, 00168.

c. The internal investigation further revealed that Dikici fabricated bank orders and forged customer signatures to authorize these transactions.[6] Graphological analysis confirmed that signatures on victim customer orders for the unauthorized transactions were not authentic.[7] In some instances, the signatures on unauthorized transaction orders were forged or identical to those on previous, legitimate orders, suggesting that Dikici copied signatures from legitimate documents to unauthorized ones to facilitate the unauthorized transfers.[8]

d. Dikici's scheme was not limited to a few transactions but involved a widespread network of unauthorized transfers to accounts of Dikici's relatives, close acquaintances, and others with whom she was associated.[9] The misappropriated funds were primarily used to funnel money through third-party accounts into Dikici's own account or to cover losses from high-risk trades in which Dikici was involved.[10] The victim customers confirmed to investigators that they had not authorized the transactions Dikici initiated from their accounts.[11]

*Embezzlement from Victim One*

e. Between October 15, 2009, and May 12, 2011, Dikici used her position as account manager at DenizBank to execute a series of unauthorized transactions from an account belonging to one of her customers ("Victim One").[12] She transferred a total of 1,167,805 TRY (then-worth approximately 727,075 USD), in forty-two EFTs, from

---

[6] *Id.* at 00147-48, 00150-51, 00153-54, 00156-58, 00167-69, 00179-80, 00182-83, 00187-90, 00202-03
[7] *Id.*
[8] *Id.*
[9] *Id.* at 00145, 00147, 00151-52, 00159, 00168, 00178.
[10] *Id.* at 00152-58, 00164, 00166-67, 00168-70, 00178-80, 00182.
[11] *Id.* at 00148, 00150, 00152, 00154-56, 00166-67, 00180, 00182-83.
[12] *Id.* at 00146-47.

Victim One's account to seven different third-party accounts belonging to individuals with known relationships with Dikici.[13] The individuals who received these funds included Dikici's brother and another relative, Dikici's close friends and their relatives, a relative of Dikici's fiancée, and former colleagues.[14] Some of this money was then transferred to Dikici's own account at a third-party bank.[15] Graphological analysis of a subset of the unauthorized transactions showed the signature used did not match Victim One's signature.[16]

  f. Dikici took steps to conceal her activities from Victim One, such that he had no knowledge of the unauthorized transactions. In two recorded phone calls between Dikici and Victim One, Dikici misrepresented the available funds in Victim One's account, in an apparent attempt to conceal her theft.[17] By May 24, 2011, Dikici had completely depleted Victim One's account.[18]

*Embezzlement related to High-Risk Trading Activities*

**High-Risk Trades involving the Aytemiz Account**

  g. Between May 4, 2011, and July 8, 2011, Dikici is suspected of transferring 1,088,000 TRY (then-worth approximately 677,389 USD) from the accounts of five victim customers ("Victims Two through Six") to an account controlled by Oylum Aytemiz ("Aytemiz"), Dikici's former colleague at DenizBank.[19] DenizBank's internal

---

[13] *Id.* at 00145-47. In addition to the unauthorized transactions described above, DenizBank's internal investigation uncovered that between February 1, 2011, and March 8, 2011, Dikici also used Victim One's account to place unauthorized investment trades, which incurred a loss of 34,820 USD to Victim One's account. *Id.* at 00152.
[14] *Id.* at 00147.
[15] *Id.* at 00145.
[16] *Id.* at 00147-48.
[17] *Id.* at 00149.
[18] *Id.* at 00146.
[19] *Id.* at 00145-46, 00158-59. With respect to one victim of this scheme, Dikici appears to have replaced some of the missing funds with money transferred from the accounts of Victim One and another victim customer. In the

investigation revealed that Dikici and Aytemiz were engaged in high-risk trading activities using funds from the account Aytemiz controlled.[20] Moreover, many of the unauthorized transfers occurred on the same day that Aytemiz and Dikici had incurred a loss from a high-risk trade, suggesting that the transfers were meant to cover the losses incurred from their trading activities.[21]

      h.      Moreover, bank-recorded telephone calls between Dikici and Aytemiz supports the conclusion that the pair understood the high-risk nature of their trading activity and were using the unauthorized transfers from customer accounts to cover their losses.[22] In these calls, Dikici and Aytemiz discussed the balance of Aytemiz's account, and Dikici suggested various trading positions.[23] At times, the pair expressed fear about their ability to cover potential losses, with Dikici admitting "[w]e are taking a huge risk, I am aware."[24] In some cases, unauthorized transfers from victim customers' accounts occurred within minutes of similar conversations between Dikici and Aytemiz.[25]

      i.      As with Victim One, the five victim customers subject to this investment scheme did not authorize any of the transfers Dikici initiated to Aytemiz's account, and Dikici took steps to conceal her actions. A graphological analysis of the customer signatures revealed that the signatures authorizing the transaction had been forged or copied from other documents.[26] Moreover, prior to initiating the unauthorized

---

description for one of these transfers, Dikici incorrectly identified that it was a partial payment for a house the victim customer had recently sold. Denizbank's internal investigation does not explain whether the profit from this sale was ever actually deposited in this account. *Id.* at 00152-53.

[20] *Id.* at 00160-64, 00167, 00170.
[21] *Id.* at 00154-57, 00164, 00170.
[22] *Id.* at 00160-64.
[23] *Id.*
[24] *Id.* at 00161.
[25] *Id.* at 00160-64.
[26] *Id.* at 00151, 00153-56, 00160.

transactions, Dikici contacted DenizBank's private banking operations division to advise that each of the victim customers no longer wanted to receive account updates, presumably to prevent the bank from notifying victim customers of the unauthorized transactions.[27]

### High-Risk Trades involving the Account of Victim Seven.

j. Between July 6, 2011, and July 8, 2011, Dikici used the account of Victim Seven to make unauthorized high-risk trades.[28] DenizBank's internal investigation revealed that during this brief period, trades from Victim Seven's account incurred a loss of 275,000 USD.[29] To cover this loss, Dikici transferred a net 278,000 USD from another victim customer's account ("Victim Eight").[30] Like other victims, Victims Seven and Eight were both unaware of the activity within their accounts.[31]

k. The extradition request contains a photograph of Dikici, which DenizBank provided to Turkish authorities. U.S. law enforcement has determined that the photographs and identifying information included in the extradition request match Massachusetts Registry of Motor Vehicles ("RMV") records for a "Derya U Terzioglu."[32] In an interview with DenizBank investigators, Dikici's father reported that Dikici left Türkiye to join her fiancé, Aykut Terzioglu, in Boston, Massachusetts on July 12, 2011, shortly after DenizBank began investigating Dikici's conduct.[33]

8. Based on information gathered and provided by the U.S. Marshals Service, Dikici

---

[27] *Id.* at 00152, 00154-57.
[28] *Id.* at 00167.
[29] *Id.*
[30] *Id.* at 00157-58, 00167
[31] *Id.*
[32] *Id.* at 00212.
[33] *Id.* at 00144.

is believed to be residing in Charlestown, Massachusetts, within the jurisdiction of this Court.

9. Tom Heinemann, an attorney in the Office of the Legal Adviser of the U.S. Department of State, has provided the U.S. Department of Justice with a declaration authenticating a copy of the diplomatic note by which Türkiye made its request for extradition and a copy of the Treaty. The declaration states that the offenses for which extradition is sought are covered by the Treaty and confirms that the documents supporting the request for extradition bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of Türkiye, in accordance with Article 19 of the Treaty, so as to enable them to be received into evidence.[34]

10. Dikici would likely flee if she learned of the existence of a warrant for her arrest.

WHEREFORE, the undersigned requests that a warrant for the arrest of the aforementioned person be issued in accordance with 18 U.S.C. § 3184 and the extradition treaty between the United States and Türkiye, so that the fugitive may be arrested and brought before this Court to the end that the evidence of criminality may be heard and considered, and that this complaint and the warrant be placed under the seal of the Court until such time as the warrant is executed.

_Stephen W. Hassink_
Stephen W. Hassink
Assistant United States Attorney

Sworn to via telephone on April __10__, 2024.

Hon. Donald L. Cabell
Chief United States Magistrate Judge

---

[34] *Id.* at 00001-2 (certification); 00003-39 (Treaty).