**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

UNITED STATES

             v.              No. 24-mj-01198-DLC

DERYA TERZIOGLU (DIKICI),

             Relator

**ORDER ON MOTION FOR RELEASE**

CABELL, U.S.M.J.

On December 15, 2025, the court certified this matter for extradition after finding probable cause to support the government's request for the extradition of Relator Derya Dikici[1] to the Republic of Turkey. (D. 83). The court at the same time also denied Dikici's request for release and ordered that she be held in custody pending final disposition of this matter by the Secretary of State and her subsequent surrender to Turkey under the applicable provisions of the extradition treaty between Turkey and the United States (the Treaty). (D. 83, 84).

As it related to her request for release, Dikici had argued that conditions of release could be fashioned to reasonably mitigate any risk of danger or nonappearance, and that her case presented "special circumstances" distinguishing her case from

---

[1] The court recognizes that the relator has assumed her husband's surname but for clarity uses her name as set out in the initial complaint.

other extradition cases.  In denying the request, the court noted among other things that Article 9 of the Treaty instructs that a relator, once located, "shall be detained until" the extradition request has been adjudicated, and "[i]f the request for extradition is granted, the detention shall be continued until surrender." (D. 84).  The court interpreted this provision to foreclose the possibility of release on bail where the court found cause to grant the request for extradition and certified the matter for extradition.  That said, the court stated that it would revisit this issue if Dikici could (1) show that these proceedings are unlikely to be resolved soon, and (2) present competent authority suggesting that the court is not bound by Article 9 of the Treaty. (D. 84).

Against this backdrop, Dikici moves anew for release. (D. 93).  She argues that the case is not likely to be resolved soon considering anticipated challenges or appeals to the court's rulings, and she contends that legal precedent provides support for her release notwithstanding the thrust of Article 9 to the contrary.  Assuming for the sake of argument that the case is not likely to resolve soon, the court continues to find that Article 9 of the Treaty is binding upon the court and mandates the relator's continued detention.

Under the Supremacy Clause, treaties (along with statutes and the Constitution) are the "supreme law of the land."  U.S. CONST.

art. VI, cl. 2.   As such, a self-executing treaty, that is, a treaty that operates of itself without the aid of legislation, is binding on a court as equivalent to an act of the legislature. *See Whitney v. Robinson*, 124 U.S. 190, 194 (1888) (to the extent that treaties are self-executing, they "have the force and effect of a legislative enactment"); *Terlinden v. Ames*, 184 U.S. 270, 288 (1902) ("Treaties of extradition are executory in their character, and fall within the rule laid down by Chief Justice Marshall in *Foster v. Neilson*, 2 Pet. 314, 7 L. ed. 435, thus: 'Our Constitution declares a treaty to be the law of the land. It is, consequently, to be regarded in courts of justice as equivalent to an act of the legislature, whenever it operates of itself without the aid of any legislative provision.'").

Although a treaty may "contain both self-executing and non-self-executing provisions," *see e.g., Lidas v. United States*, 238 F.3d 1076, 1080 (9th Cir. 2001), there is no issue here that the Treaty as a whole is self-executing where then President Carter, in transmitting the Treaty to the Senate for its consideration and ratification, stated that "[t]he treaty is self-executing and utilizes existing statutory authority."  *See* United States-Turkey Treaty on Extradition and Mutual Assistance in Criminal Matters, 2 PUB. PAPERS 1390 (Aug. 2, 1979).  Consequently, the court finds that it is bound under the Supremacy Clause to follow Article 9 of

3

the Treaty, and therefore must detain the relator pending the completion of these proceedings.

The court acknowledges the countervailing authority cited by the relator but does not find it persuasive. The relator cites principally to an extradition case involving the same Treaty with Turkey where the court granted the relator bail after finding the case presented special circumstances. *See* In *Matter of Extradition of Sidali*, 899 F. Supp. 1342 (D.N.J. 1995). However, the court in *Sidali* did not reference or discuss Article 9 and thus did not discuss whether a court may properly ignore such a provision if the case otherwise presents special circumstances (in addition to no risk of flight or danger). The relator also cites to several cases supporting the proposition that an extradition court has the authority to consider a bail application both pre- and post-certification, that is, both before and after the court has adjudicated the issue of certification. (D. 107). But even presuming this proposition is correct, which the court does, none of the cases address whether an extradition court considering a bail application may choose to ignore a valid treaty provision instructing that bail shall not be granted and the relator shall remain detained throughout the extradition proceedings. In light of the foregoing, the court concludes that it may not do so.

Accordingly, the motion for release is DENIED.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED: July 23, 2026